We'll turn next to Chasman v. JP Morgan Chase, 2593. Thank you. It's counsel. All right. Here we go. Good morning. If it may please the court, I'm Sir Weissel, Plaintiff's Counsel, Plaintiff and Appellant's Counsel, and my apologies if I'm very rough around the edges. This is my first appellate argument. It's just a conversation, so please proceed. Thank you. I have two points that I feel that I do not emphasize sufficiently in my papers, and that is that even if the argument of defendants is and prevails regarding their argument on the claims should not be dismissed because that rule only applies to damages claims and not to a pursuit of injunctive relief, which the original and proposed amended complaint both seek. So I'd like to address that first, and second, I want to be more clear than my papers are that in my arguments regarding the breach of fiduciary duty, I am appealing to the court to find that there could be such a duty and that the finding of a lower court is that there cannot be such a duty is effectively incorrect. So there are two ways in which that duty might arise, as I understand it from your papers and just based on my understanding of fiduciary duties, it might arise because of the discretionary nature of the accounts, but here that they're non-discretionary, or it might arise based on your argument from the code, the IRS code, section 408. Is that right? Is there some other way that the duty arises? I am not arguing that there is any other way. I'm actually arguing that it arises from the nature of the relationship, because the custodian is obligated to follow the treasury regulations and because the regulations extensively describe the relationship as fiduciary, that although, as I understand the regulations, it's limited to tax-related cases and claims. Is that right? A prior case law has not really looked at the depth of the relationship described in the regulations, and prior cases have found, you're correct, that the description is limited to tax issues. I'm actually arguing- Counsel, I'm sorry. Counsel, the district court, as you know, concluded that no fiduciary duty existed between the parties because the plaintiffs explicitly disclaimed such a duty by contract. Yes, that's correct. What's your best response to that? I argue, and I make this point in some detail on my reply brief, that waivers are not always effective, and whether a waiver is effective is a question of fact. For a waiver to be effective, it must be fully informed, and I argue that, in this case, it wasn't. This issue was not fully explored at the trial court level, and it's a question of fact that should be subject to full district court process. Was the waiver informed? Was the waiver effective? In that case, does the duty then survive the waiver in the boilerplate? Of course, in this case, the party of seeking the waiver and the party of breaching the duty are the same party, so their intent to effectively breach the contract and not enforce their duty to pass the contract from decedent to beneficiary untouched, unchanged, is something that the bank knew and did not inform our clients of their intent to effectively not protect their interests. What is the description of the contract right that you claim? The contract rights derive from what? The contract rights of the plaintiffs derive from the 25-year history and performance of an evergreen or automatically renewing beneficial interest rate. The plaintiffs argued that they have that right on two bases. One, that when they signed the documents for a new account, they included by reference a rider that explicitly pulled in that contractor. That explicitly what? Say it again. Explain it, go ahead. That explicitly included the contract term, the evergreen interest rate that their mother had benefited from for 25 years. Yeah, but what's the basis of their claim that they have the right, more or less in perpetuity, to renew the CDs at a 12 percent rate as long as they choose to do so? Yes, that is a rather amazing fact to consider, but I have to point out other issuers have entered into bad contracts and entered into a perpetual or 100-year contracts. So this is what I'm just asking you. What is the basis of their claim of a contractual right to go on doing that? I'm not implying anything by my question. I'm just asking you explain to me the basis, their claimed basis of a contract right entitling them to continue to renew the CDs as long as they wish to. And I assume that it would mean that their children and their children's children and so forth could continue to do it as well. Explain to me the basis for it. We actually don't make the arguments at length for their children and children's children. What is the basis of the claim? There are two basis. First, and their mother had that contract, right? And they claim it on two bases. One, a written rider attached to a contract signed with Chase Bank when they transferred the CD to their own. This is the addendum. This is the addendum, which is on page 47 and 55 of the appendix. And there's actually a term in that that is in in both their own and their and their mother's boilerplate agreement with Chase Bank that the terms of that agreement are successors. And as as hair, as heirs or beneficiaries, we believe they are they are successors to their mother's interest. So so what is binding on their successors? All of effectively all of the contract terms of of their mother's contract. But but for our purposes, most importantly, the evergreen 12 percent interest rate. And what makes it evergreen? What makes it evergreen is is that when they when they signed up for it in 1983, they got they they got this they got this rate, which, according to its terms, was renewed at 12 percent. And in 1991, when the bank tried to contest whether the term really what really what was evergreen at that point there and their mother and father who has a similar account, contested it with the bank and effectively won and got a letter promising them that they would have this evergreen term that that is the 1991 letter. And I think it's on page 241, but I may be wrong. But there is there is a 1991 letter in the record, which is which is the only existing written record of this evergreen term. Yes. We have no contract to rule off. May I ask you about I'm sorry, Judge LaValle, go ahead. No, go ahead. I asked you about just to follow up on the successor argument that I think you're making that draws from the language of the deposit account agreement. Is that right? I believe that's correct. Yes. OK. So there was a sentence immediately after the sentence that you're pointing us to, which prohibits the transfer, assignment or grant of a security interest in the mother's account without Chase's written consent. Am I is that accurate? I believe that's accurate. But the security interest is is not an issue here. A security interest would be would be as collateral for a loan. OK, so so your your view is that that is unrelated, even though it follows the line about successors unrelated entirely. That's relatively unrelated and relatively unrelated. Yeah. How is it related? I I mean, I don't other other than being the next sentence, I don't I don't I don't see it directly related to this issue. Why? So the there's a sentence in the. In in in in First National First National's letter, it says, I will personally see that your three year CD receives a minimum rate of 12 percent for all future renewals of the three year term. Is that is that what you rely on? Yes. All right. And so why is that not a personal promise to the person of the mother to whom it was addressed, as opposed to one that that would I mean, are you arguing that this that this promise then ran with the security, that it was it became a term of security so that so that anyone to whom it might be sold, for example, like a debenture, if a debenture says on it, this debenture will bear a 12 percent rate of interest as long as it is outstanding. It doesn't matter who the owner of the debenture is or as long as it was legally acquired. It can be sold by the person who originally had it to another person and then to another and then to another. Are you are you arguing that that promise made these CDs, CDs that were that were infinitely renewable at a 12 percent term? As shocking as it sounds, effectively, yes. It may have been badly written by the bank if if they intended only a personal guarantee. It's not what it what they wrote. They actually wrote as long as the CD renews. If if you read the actual language, it does not refer to as long as you own the CD, it does not refer to as long as you own the CD. Again, it is not not a good contract for a bank to enter. I'm not arguing it is smart of them, but I'm arguing it exists. So I'm not defending their business decision. I'm just saying they're on the wrong side of it. And counsel, could I just go back for a moment to the question of the relationship between the breach of contract and breach of fiduciary duty argument. So, as you know, Chase argues that your client's fiduciary duty claim fails. Yes. Also fails because New York law bars claims for breach of fiduciary duty duplicative of a contract claim. I'm wondering if you could address that further. My my best argument is actually taken from the the long discussion in my reply brief that the duty, the duty may maybe may be created by the contract that may that may then exist independently because of the nature of the relationship. For example, if you enter into a trust agreement, the trustee becomes a fiduciary and there is a breach of fiduciary duty obligation created by the trust structure, but independent of it, of the actual claim. I believe that can exist in in this case and has to be has to be fully examined by the district court, but most importantly, it's a question of fact as as the as the argument I make in my papers, it's not something for the district court to decide on the pleadings when it's a factual issue that should be subject to both both discovery depositions and. Are you saying that a duty is a is a legal question? Jumped the gun. I mean, what are the. Just guess. I'm sorry. Are you saying that a breach of a duty is a the question as to whether there's been a breach of a duty is a is a factual question and not a legal question? Yes. On whether the duty exists and whether it's been whether it's been breached, whether the duty exists comes comes down to the factual question of the nature of the relationship between the parties. And to my to my surprise, I must admit, when researching the issue, the case law supports the argument that that's a factual determination and not a legal one. And for that reason, should not have should not have been decided. And courts have said we don't effectively we don't like this, but it's but it's a factual decision that we should not reach at this time. That should be determined by the fact finder of whether there was there is or was if it is jury duty. And on the on the breach of contract claim, would you just point to me where in the operative complaint you identified the contractual provision that Chase violated? You've you've mentioned you've said in the briefing, but where in the complaint? I'm looking on page J.A. 36. Hold on. Um, paragraph six, um, paragraph 16 and 17, the 36 J.A. 36. Okay. Paragraph 16 and 17. Yes. Okay, I'm in the complaint there referring to the addendum to the to the one signed document and that addendum makes explicit explicit reference to the prior existing contract and for 25 years. Now, the the rules that of of of of Chase, under which these securities were issued, provide that at least the recent ones, I mean, you must file any lawsuit against us within two years after the cause of action arises, unless etc. Now, why didn't this course of action arise when Chase refused to when Chase first refused to to renew the CDs at 12 percent, but at market rate, as they claimed, were the why didn't you have an obligation to bring this suit within two years after that so that the present suit is untimely? I mean, the way it seems to me the way you interpret it, you could bring the same suit in in the year four thousand and fifty six because you're you're saying that at least if somebody keeps these CDs, renews these CDs until then, at any time, if you can do it now, why can't they do it in the year four thousand fifty six? As as strange as it sounds, I would actually argue because it is an evergreen contract, each breach is is separate, is separately actionable. It was breached in 12. It was breached in 15. It was breached in 18 just weeks before, just weeks before this case was filed. And it was briefed in it was breached again in January during while this appeal was pending, when when they again failed to to renew. And by the way, the plaintiffs in in in after after the 12 breach and complained to various bank regulators and made no progress. In in 17, we made a an abortive lawsuit that we abandoned for and for personal reasons and then and then filed this case in 18 shortly after again. Another breach. Now, if I would argue that the that the 12 and 15 breaches are brought in are brought within the statute under the continuing wrong doctrine because each was a separate wrongful action. And an explicit action. That that the plaintiffs were protesting, but even if the 12 of a renewal is is is outside the statute, the contract continues and the 18 and 21 renewals should at least get injunctive relief on going on going forward. They are certainly within within any statute limitations. The contract is continuing again as a contract attorney. I've drafted an unfortunately large number of automatically renewing contracts, which which would fall under the same category as long as the contract is renewed and it has not been terminated by either party. Then breaches of the contract are are separate, separately actionable. The contract is ongoing today in in in April 21 and both parties have the ability to enforce it, including including these terms that we obviously dispute. I would argue, of course, my client has has not waived it, having protested loudly along the way. So you. You have reserved two minutes for a bottle, we'll hear from counsel for JP Morgan Chase as well as. May it please the court, I'm Andrea Weiss for JP Morgan Chase as a housekeeping matter, let me start by saying that this case was appealed both for the granting of judgment on the pleadings on the original complaint and for the denial of the motion to amend. And counsel does not defend the granting of judgment on the pleadings on the original complaint. So as I understand the argument today, it's all directed to whether Judge Buchwald erroneously denied the motion to amend to allow them to proceed on the first complaint. The district court directly correctly denied the motion to amend on grounds of futility as a matter of clear New York law. The Chasmans at the pleading stage were required on their breach of contract claim to identify a specific contractual provision that was breached. And that didn't they didn't they didn't they refer to the didn't they refer to the promise that says, I hereby, I personally promise you that you will get to 12 percent on each renewal. They did, your honor. They referred to that and they refer to their so-called addendum. And let me answer first with respect to the 1991 letter from First Chicago to their mother. That letter is to their mother. And that letter, which is next to the proposed amended complaint, actually undermines their argument that this promise applies to them. It specifically said that they're not really arguing that it applies to them. They're arguing that it applies to the security or at least that's an alternative argument is that it is is that the bank promised that it would be a a a security renewable at 12 percent interest. So with respect to stating a plausible claim, your honor, the error here that the Chasmans make is to refer to the CD as a security. The CD is not a security. The CD is an FDIC insured bank account. It's a savings account that differs from an ordinary savings account only in that it's a time deposit. That's what their mother had from First Chicago, according to that letter. And with respect to whether it applies beyond her savings account, that letter basically says to their mother, Mrs. Chasman, you are mistaken. This bank account was never intended to renew at 12 percent after the first renewal. But we understand that you thought differently and therefore we are going to allow your CD to renew at 12 percent. Now, the Chasmans did not inherit a security. They are her beneficiaries on that account and they inherited money. This is so under the election of this. They are not successors. They're beneficiaries. They are beneficiaries. They are not successors. And the election of payment forms, which they put in as an attachment to their proposed amended complaint, says, how do you elect to take your distribution? And their agenda says transfer 50 percent to each of us. And the IRA rules that govern non-spouse beneficiaries say that she doesn't they don't stand in her shoes. Only a spouse can literally take over an IRA. What they had was the right to the money and they could have taken it and bought a house, taken it and put in a mutual fund. And they also, as her beneficiaries, can put it into a tax advantaged account, which is an inherited IRA. And that's what they did. They took the money and they opened CDs and they agreed by signing on the dotted line that they were bound by Chase's account rules and regulations, which spelled out that upon renewal, the CD will renew at the interest rate then in effect for like term CDs. I'm paraphrasing, but that is essentially what the provision says. So you started out, you started out by saying that they don't identify any contractual provision that Chase violated in their complaint. And your friend on the other side pointed us to J.A. 36, I believe, J.A. 36, paragraphs 16 and 17. Why isn't that? So adequate identification. So 16 and 17 refer to the addendum, they are paraphrasing what they attach. And so we have to look to the addendum to see if that can be construed as a contractual term. And what the Chasmans are doing is they're using the addendum to basically say we get what's in that 1991 letter. But the letter, as I said, is specific to their mother's bank account. And there is only one sentence in the addendum that they say required Chase to pay them 12 percent interest every three years and their children and their children's children and so on. And that sentence is this. These contract bear a coupon or 12 percent or so, which we expect to be transferred to us 50 percent. And the district court correctly found that sentence too vague to be imposing any contractual obligation. And let me unpack that. First of all, this is not a coupon instrument. Whatever they may think, this is not a bond. It's an FD. What she had was an FDIC insured bank account. And that's what they have. Their account statements are in the record. They took half the money, each of them, and put it in an FDIC insured. I just want to be clear. Are you are you disputing that the addendum is part of the agreement between Chase and Chasmans? That 12 percent line. It's not clear. I mean, vague or un-vague, are you disputing whether the addendum and then you can dispute other specific components of the addendum. But are you disputing that the addendum is part of the agreement between Chase and Chasmans? To the extent it says put the money in two IRA CDs for us, it is a part of the agreement. But to the extent that they purport to be adding a term to pay 12 percent for their lives and beyond, that term is not in the addendum. It doesn't say that Chase will pay 12 percent upon every renewal of a certificate of deposit forever. The term has to be sufficiently clear. So that's what you're disputing is the interpretation of the addendum. OK. All right. We're not questioning that they submitted that. Well, I should say, actually, your honor, that we are accepting as true that this was attached at this phase of the proceedings. We're not in discovery, but we accept as true that they submitted this as an addendum. Assuming the truth of the fact that this is an addendum based on their pleading, that sentence could not require anybody to pay 12 percent interest forever. It just doesn't say that. And it doesn't attach any agreement of their mother to say this is what we mean. It doesn't attach the 1991 letter from First Chicago. And if it did attach that letter, it would be clear they didn't get 12 percent. It's not a coupon. It's not a bond. It was a bank account. Their mother was mistaken. And this was something that was given to her. It is not plausible. It is not a plausible claim that this one sentence in the so-called addendum required Chase to pay 12 percent interest forever. You just point me to the actual page in the joint appendix that you're reading from. Yes, please. I believe it is 46. But let me just double check that. It's 46, your honor. What is it? Thank you. This is an attachment to the proposed amended complaint. And what this letter says is you're mistaken, but we're going to give it to you. It doesn't say we're going to give it to anybody. There's nothing in this letter that their mother even thought it would extend beyond her life. This is a gesture of goodwill. Right. Yeah. So this is an attachment to the proposed amended complaint. Can you just unpack for me sort of where we are procedurally? In other words, as you point out, the district court denied the motion. To amend the complaint further. So if we were to agree with the district court or conclude that the district court did not abuse its discretion, would the addendum be in front of us? Well, the addendum is an exhibit, is an attachment to the proposed amended complaint. So to the extent the court is reviewing her decision that the proposed amended complaint is futile, then it is before the court on this appeal. If I understand the question correctly.   The addendum was not attached to the original complaint in any way. The addendum was not attached to the original complaint. And I do want to point out that the first Chicago letter, which is on page J.A. 46, is not alleged to have been submitted to Chase with the election of payment. That is just something they attach to their pleading. So there is nothing that links up that addendum to this letter. And as I said, this letter undermines that the rate is forever and undermines that there's a coupon or that there's a security, it's a bank account. Your honors, if you don't have further questions on that, I do a little bit. So one of the arguments that you made or you make, I take it, and that the district court embraced is that the that these these beneficiary forms, I take it the addendum is a modification to the contract. But in answer to my question, I think is that is that what you're arguing? Your honor, as I said, we we are just accepting as true for the purposes of the pleading that they submitted that letter. So this is the contract part of it. That is what is pled. And our argument is there is nothing in these documents that requires Chase to pay 12 percent interest. There is no term, including the addendum that says you will pay 12 percent. I think you just answered my question. OK, so you're going to turn to something. I'll give you a little bit more time since I gave you a friend. Well, your honor, I certainly would like to answer all the questions on contract point if there are more. And I'd like to just briefly address the fiduciary. Yes. Judy, I hope you'll also address the the timeliness issue. I will, your honor. There is no fiduciary duty as a matter of law here for multiple reasons. First of all, fiduciary duty claim is the same as the breach of contract claim. The fiduciary duty claim is you should be paying us 12 percent interest forever. And New York law is long settled and clear that a breach of fiduciary duty claim that is premised on the same conduct as a contract claim cannot stand. For that reason alone, the case that claim should be dismissed. Second, New York law is clear that banks do not owe fiduciary duties to their depositors. Your honor. If you could respond for a moment to your brother's, to your friend's contention that he hit out of the park in his reply brief. And his contention that Chase's understanding of New York law and the relationship between breach of contract and breach of fiduciary duty is wrong. Well. They did not actually plead any facts that would establish a fiduciary duty independent of what is in the contract. I mean, they don't plead that there was some kind of relationship of trust and confidence that would take it outside the contract. And this is a deposit account. And the law in New York is clear that that is a debtor-creditor contractual relationship. It is not a fiduciary relationship. Third, they rely on Section 408 of the Internal Revenue Code and its implementing regulations. But there really is no authority to support that this creates any fiduciary duty. Essentially, all of the deciding cases are clear that the code just establishes that a non-trust custodial account, which is what this is, it's a bank CD held in custody by Chase, may be treated as a trust for tax purposes. Do we have... I was not able to find a Second Circuit case that says that. I mean, I'm not disputing or equivalent with the argument. But have we held anything remotely close to this on 408? So, Your Honor, I apologize not to have that at my fingertips. But my recollection is that there is a lower court case that was affirmed, although not precisely on those grounds. But I'm sorry I don't have that at my fingertips. But I'd be happy to submit a letter if there is such a case on that. But I don't know that the Second Circuit has specifically addressed that issue. But the lower courts within the circuit and other circuits have uniformly held that the Internal Revenue Code does not make a fiduciary account or a fiduciary relationship out of a non-trust account. And this is not a trust account. This is a bank CD, an FDIC insurance savings account. And then last, the fiduciary duty is explicitly disclaimed in the custodial agreement. And they acknowledge in the complaint and in their briefing that they signed off on that and they are bound by it. And they have cited no authority. And we have found none that says that any fiduciary duty cannot be disclaimed under New York law. And New York law is clear that it can be disclaimed. And so for that fourth reason as well, the fiduciary duty claim is futile. And what about the argument that further factual development is required to determine whether the disclaimer, signing the disclaimer, was knowing, was informed? Well, Your Honor, there's no, they actually don't plead any fact saying it was not. And they rely on all of these agreements. So, you know, the law is that you, in New York, and we didn't brief this, it didn't come up. But the law in New York is you are bound by what you sign. And if you don't understand it, it is your responsibility to get an explanation. I mean, there are cases that say, if you're blind, somebody has to read it to you. If you don't understand it, you have to have it explained to you. You can't come back later and say, oh, gee, I didn't know. And so there is no factual development on that. And there actually is nothing alleged saying that they didn't understand it. The argument that it wasn't disclosed, that disclosures were not made, the account regulations explicitly disclose that it will, a CD will renew at the then current rate. And the custodial agreement specifically disclaims a fiduciary relationship. So it's all disclosed, plain as day. And let me last address the contractual limitations, period. So that let me just ask you another question about fiduciary duty before you go on, which is, I think I understood you to say that New York law provides that a claim of fiduciary duty cannot validly rest on the same facts as a claim of breach of contractual duty. Is that? Yes, Your Honor. Yes, Your Honor. Does that make any sense? I mean, supposing that that A makes a contract with a friend and says, I'm going off on a long trip and I'm going to in exchange for my payment to you of certain fees, I'm going to ask you to take custody of my money and invest it prudently and watch over it, both for my benefit and for the benefit of my children and so forth, and to be a careful custodian of it and prudent and goes off and supposing he then comes back and finds that the that the person who was entrusted with the funds did some bad things and brings a two part claims. First, you breached the contract in which you undertook to do these things prudently and so forth. And secondly, you breached a fiduciary duty. They both rest on the same facts. Do I understand you to be saying that New York law says it can't be a fiduciary claim if it rests on the same facts as a contract claim? Is that New York law and does it make any sense? So thank you, Your Honor. I should clarify that if the contract itself creates a fiduciary duty, then yes, there can be a lawsuit for breach of the fiduciary duty. In fact, it is the standard that fiduciary duties are created almost exclusively by contract. It is the unusual case that it's not a contract. So, yes, if the contract says we are a fiduciary or you are imposing trust in us and we will use our discretion to invest your money, if that is breached, then there could be a breach of fiduciary duty claim. But this ordinary banking contract, which the account regulations are, does not have any of those say that what the pleading does here is simply reiterate a breach of contract. That's not saying that a fiduciary claim cannot rest on the same facts as a contract claim. You're just saying that there is no allegation of facts that would give rise to a fiduciary duty. There is no provision of any contract that gives rise to any fiduciary duty here. There is only a contract. And what they're pleading does is take that breach of contract. That is, you didn't renew at 12% and slap a fiduciary duty label on it. And that is not permissible under New York law. That was my point, Your Honor. I'll turn to the limitations point. So there is a contractual limitations period of two years that went into effect with the 2012 contract. But since it didn't apply to them until their 2012 CD matured in 2015, and that gave them two years to sue on the 2012 breach from them and on the 2015 breach. These kinds of provisions, if reasonable, are upheld in New York law. The circuit has upheld them in the banking context with a one-year limitation. And that applies here. Now with respect to the argument that this is a continuing wrong such that they can keep suing until the year 4000, that is not supported in law. As the circuit recently held in October of last year after we filed our brief, the continuing wrong doctrine can only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct. What is alleged here is that in 2012, Chase said this CD does not have a 12% evergreen term. This CD under our agreement renews at the current rate. And they actually said that back in 2008 and 2009, but they said it again and actually applied it in 2012 and did not renew. And so every renewal flows from the fact that Chase breached the so-called evergreen provision in 2012. Does this analysis also apply to the breach of fiduciary? Look, I understand your argument about the overlap or the duplication of breach of contract and breach of fiduciary duty claims, but does this argument on timeliness also apply to the breach of fiduciary duty claim? Well, yeah. I mean, the contract does apply to any claim on the deposit account. So it doesn't matter what label has been put on it. And again, if that was a breach, it happened when Chase said we're not giving you that rate anymore and renewed at a lower rate. Because New York law does seem to distinguish between, in connection with this continuing violation doctrine, between breach of contract claims and breach of fiduciary duty claims. So if you would just briefly explore that for me, if we disagreed for you, for whatever reason, and thought that there was a separate breach of fiduciary duty claim, how would we analyze this continuing violation theory under New York law? I think, Your Honor, it would be basically the same thing because it would be a decision of saying you fall within this contract. It's not something new every time. These are additional damages that flow from the alleged fiduciary saying you're in contract B, not in contract A. Thank you very much. So you've reserved some time for rebuttal, Mr. Weissel. I would like to quickly answer some of the points raised by my friend at a prison council. First, obviously, we disagree that the 91 letter is a specific term and it's actually in favor of my clients and not against them. Again, on the actual sentence that I read, I will personally see that your CD receives 4.4% for all future renewals. And that means all future renewals of the three-year term. Second, I do not claim that this is a security. I do claim it is a contract. A security has its own implications and questions, which I don't want to and cannot go into. But as a contract, it's a question of a contract interpretation. And the argument that it's just a bank account, it's a bank account with a contract. It's the contract that I seek to enforce. The fact that it's about a bank account is actually relatively irrelevant. Addressing the statute of limitations claims, if I may, the case that was actually emailed to me last night by my friend at a prison council, a Miller-Dorse Metropolitan, I actually think argues in her favor because the presumption of that case is that, quote, Miller and Barton do not dispute that MetLife's alleged breach first occurred in 2000 and the statute of limitations for their breach claims would, unless told, have expired in 2006. We do not make that concession. We contest that explicitly and say each separate renewal is a separate breach. If you look at this contract as a long-term contract with separate actions involved, each separate breach is a separate action. Thank you very much. We'll reserve the decision.